## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JUNIOR JUMPP HOLNESS,
  *Plaintiff*,

  v.                                          No. 3:19-cv-01031 (JAM)

SAVOIE *et al.*,
  *Defendants*.

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Junior Jumpp Holness is a prisoner in the custody of the Connecticut

Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under

42 U.S.C. § 1983. After an initial review, I conclude that the complaint should be served on

some of the named defendants as set forth in the ruling below.

### BACKGROUND

Holness names eight defendants in his complaint: correctional officers Savoie, Gilman,

and Paul Roy; warden Anthony Corcella; deputy warden Ronald Cotta; correctional counselor

Oleary; counselor supervisor Doran; and lieutenant Dumas. The following facts are

accepted as true only for purposes of this ruling.[1]

On May 3, 2019, Savoie made sexual comments to Holness, who filed a grievance in

response. Doc. #1 at 4 (¶ 1). Rather than investigate the incident, intelligence officers Doran and

Roy began to harass Holness and to issue him false disciplinary reports. *Ibid.* (¶ 2).

---

[1] Two weeks after he filed his complaint, Holness filed a jumble of documents on the record. Doc. #6. Because none of these documents were attached to, referenced in, or integral to the complaint, and some of them even postdate it, I find that they were not incorporated into the complaint and do not consider them for purposes of this initial review order. *See Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018). If Holness believes any of the information in these exhibits to be germane to his complaint, he may promptly file an amended complaint to include such information.

As of June 12, 2019, Savoie was still working in Holness's housing unit. *Ibid.* (¶ 3). That afternoon, Savoie and Gilman arrived at an interview room to escort Holness back to his cell when, instead of removing the chain attaching his handcuff to the desk and wall, Savoie grabbed his penis "hard" while Gilman watched smiling. *Id.* at 4-5 (¶ 4). When Holness yelled, Gilman came over the desk and held down Holness's shoulder while Savoie quickly removed the handcuff. *Ibid.* In the hallway, Holness "tr[ied]" to report the incident to a lieutenant, but Savoie interrupted, chokingly grabbed him by the collar, and took him to his cell. *Id.* at 5 (¶ 5). Once there, Savoie punched and "assaulted" him "in his leg [*sic*]." *Ibid.*

The next day at 1:30 AM, Holness reported the incident to the Prison Rape Elimination Act hotline. Doc. #1 at 5 (¶ 6). The state police interviewed Holness about the aforementioned incidents a short time later. *Ibid.* (¶ 7). Later that morning, while touring Holness's housing unit, Savoie threatened to kill Holness and made comments about sexual favors. *Id.* at 5-6 (¶ 8).

Then, while Savoie and Dumas were touring together, Holness told Dumas that he feared for his safety around Savoie and asked for his inhaler because he was having difficulty breathing. *Ibid.* Savoie told him "you don[']t get shit[,] scumbag" and "you can die[,] you piece of shit"; neither officer permitted Holness to call the medical unit for his inhaler. *Ibid.*

On June 20, 2019, while touring, Savoie told Holness he was going to "(F)" him. *Id.* at 6 (¶ 9). Holness subsequently found a hair and a white substance in his food. *Ibid.* He reported this to Oleary, but she said that there was nothing she could do because she is just the unit counselor, not a custody officer. *Ibid.* Later that day, Holness made a second complaint to the state police. *Ibid.* (¶ 10).

Holness had repeatedly complained to warden Corcella and deputy warden Cotta about these incidents, but neither did anything to protect him from Savoie. *Id.* at 7 (¶ 12). Oleary also

had knowledge of the incidents but failed to take action, as well as denied Holness access to the courts. *Ibid.* (¶ 11). In addition, Dumas as the unit manager, *ibid.* (¶ 13), and Doran and Roy as intelligence officers, *id.* at 8 (¶ 14), knew of the incidents and did nothing to protect Holness.

As a result of Savoie grabbing Holness's groin, Holness's testicle sometimes shifts out of place and causes him pain. *Id.* at 8 (¶ 14). Holness has sought physical and mental health treatment for his injuries. *Ibid.* He seeks money damages from the defendants in their individual capacities, as well as injunctive relief in the form of changes to DOC policy to protect him and others from sexual abuse. *Ibid.*; *see also id.* at 1.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### A.  In forma pauperis *status*

The Court granted Holness's motion to proceed *in forma pauperis* (IFP) on July 12, 2019.

Doc. #8. But although Holness is indigent, he is also subject to the "three-strikes" limitation that

restricts a prisoner's access to IFP status if he has previously filed meritless actions three times.

*See* 28 U.S.C. § 1915(g); *Holness v. Gagne*, 2019 WL 1789907 (D. Conn. 2019) (ordering

dismissal of three of his complaints if he did not pay the filing fee within 21 days, and he did

not); *Jumpp v. Morris*, No. 3:15-cv-1555 (VLB) (Doc. #8 entered June 3, 2015) (noting he

previously had three cases or appeals dismissed as frivolous).

The three-strikes limitation is subject to exception if a "prisoner is under imminent

danger of serious physical injury." § 1915(g). As the Second Circuit has noted, the

"unmistakable purpose [of the statutory exception] is to permit an indigent three-strikes prisoner

to proceed IFP in order to obtain a judicial remedy for an imminent danger." *Pettus v.

Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). In order to qualify for the exception, a three-

strikes litigant must show (1) an imminent danger of serious physical injury, (2) that is fairly

traceable to unlawful conduct asserted in the complaint, and (3) that a favorable judicial outcome

would redress. *Id.* at 298-99. The exception only applies where the danger is imminent at the

time the complaint is filed. *Id.* at 296.

Holness alleges that Savoie—who he alleges assaulted and threatened him—continued to

tour his housing unit. The ongoing exposure to Savoie at the time of filing, if true, posed an

imminent danger of serious physical injury to Holness that is fairly traceable to Savoie's alleged

unlawful conduct. I will therefore provisionally permit his claim on that basis to proceed IFP.

Although Holness's other claims do not involve imminent danger, I will address them because "a

plaintiff filing IFP on the basis of the imminent danger exception can proceed with all claims in

[his] complaint." *Chavis v. Chappius*, 618 F.3d 162, 172 (2d Cir. 2010). If defendants believe that there is no basis for a finding of imminent physical danger, they may promptly file a motion for reconsideration of the Court's grant of IFP status along with appropriate evidentiary materials. *See Shepherd v. Annucci*, 921 F.3d 89, 94-96 (2d Cir. 2019).

## B. The claims

Because the record is unclear whether Holness is a pretrial detainee or sentenced prisoner, I will assume for now that he was a pretrial detainee at all relevant times and analyze his claims under the rubric of the Fourteenth Amendment's Due Process Clause rather than under the more demanding requirements that apply under the Eighth Amendment for claims brought by sentenced prisoners.

### 1. Excessive force

The Fourteenth Amendment's Due Process Clause "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). A plaintiff may prevail by showing "that the force purposely or knowingly used against him was objectively unreasonable." *Ibid.* In addition, an officer has a duty to intercede and prevent fellow officers from subjecting another person to excessive force, and he may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it. *See Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016).

The complaint plausibly alleges that Savoie assaulted Holness without any legitimate justification and that Gilman was present and in a position to intervene. Accordingly, I will allow Holness's claim for the use of excessive force to proceed against Savoie and Gilman.

## 2. *First Amendment retaliation*

In order to establish a First Amendment claim for unlawful retaliation, a plaintiff must prove that he engaged in speech activity that is protected by the First Amendment and that a governmental defendant took adverse action against the plaintiff because of the plaintiff's protected activity. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). A plaintiff must prove that he suffered an adverse action of sufficient magnitude that it would deter a similarly situated person of ordinary firmness from exercising his or her First Amendment rights. *See Burns*, 890 F.3d at 93-94; *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan*, 794 F.3d at 294. For this reason, a prisoner's First Amendment retaliation claim must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Ibid.*

The complaint alleges that Savoie assaulted Holness on June 12, 2019, the month after Holness had filed a grievance against Savoie for making a sexual comment to him. These allegations plausibly establish a First Amendment retaliation claim against Savoie. As for the remaining defendants, however, Holness does not allege specific facts about engaging in protected activity, the nature of any retaliation, or the causal link between his activity and the later adverse actions. Accordingly, I will dismiss Holness's First Amendment retaliation claims as to all other defendants.

### 3. *Deliberate indifference to safety and serious medical needs*

In order for a pretrial detainee to establish a claim under the Fourteenth Amendment for deliberate indifference to safety or to a serious medical need, a pretrial detainee must show that the danger or medical need was serious and that the defendant recklessly failed to act with reasonable care to mitigate the danger or risk of harm. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

As to Savoie and Dumas, Holness alleges that they denied him access to his inhaler while he was having breathing issues, and that Savoie also threatened that he could die. These allegations are enough to allow Holness's claim for deliberate indifference to safety and medical needs to proceed against Savoie and Dumas.

As to the remaining defendants, however, Holness has not alleged facts to plausibly suggest that they were aware of a risk to Holness and then acted recklessly by failing to take action to protect Holness from harm. To the extent that Holness alleges that he complained to supervisory officials, the complaint does not show that he did so before Savoie's alleged sexual assault, and the complaint also does not reflect that Holness was otherwise subject to another physical assault by Savoie despite the fact that Savoie continued to work on his unit. Holness has now been transferred to another facility, thus mooting his claim for injunctive relief with respect to any threat from Savoie. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Accordingly, I will dismiss Holness's claims for deliberate indifference to safety against the remaining defendants.

### CONCLUSION

The following of Holness's claims for money damages will go forward subject to defendants' right to challenge whether his *in forma pauperis* status should be revoked and/or to

seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6): excessive force as to Savoie and Gilman; free speech retaliation as to Savoie; and deliberate indifference to serious medical need as to Savoie and Dumas. All remaining claims and defendants are dismissed.

The Court enters the following orders:

(1) **The Clerk shall** verify the current work address for each defendant with the DOC Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided by **December 30, 2019**, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, **the Clerk shall** make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(3) All defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26-37, shall be completed by **July 6, 2020**. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed by **August 6, 2020**.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If Holness changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Holness must give notice of a new address even if he is incarcerated. He should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Holness has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 9th day of December 2019.

*/s/ Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge